Filed 1/26/21  Van Taylor v. Ivie CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THRIS VAN TAYLOR, | B281545 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. Nos. BC268576, BC317765, BS098998 |
| v. | |
| RICKEY IVIE et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment and order of the Superior Court of Los Angeles County, Mark V. Mooney, Judge. Affirmed.

Thris Van Taylor, in pro. per, for Plaintiff and Appellant.

Richardson, Fair & Cohen, Manuel Dominguez, Mark Petersen; Ivie, McNeill & Wyatt, Chandler A. Parker; Ivie, McNeill, Wyatt, Purcell & Diggs and Rickey Ivie for Defendants and Appellants.

# INTRODUCTION

Appellant and cross-respondent Thris Van Taylor (Van Taylor) and respondents and cross-appellants Rickey Ivie and Eloise Ivie (the Ivies) are next-door neighbors. For almost 20 years, they have been involved in a dispute over a narrow strip of land and the block wall between their homes. The dispute has generated three trials and several appeals.[1] Van Taylor contends that the block wall and the strip of land are on his property, and he sued the Ivies for trespass, nuisance, assault, and injunctive relief for using the wall and encroaching onto his land. In response, the Ivies claim joint ownership of the wall and seek an easement to use the land. After the third trial in 2016, the jury returned verdicts for Van Taylor on the trespass and nuisance claims and the Ivies' claim for a prescriptive easement; and the trial court granted a nonsuit on Van Taylor's cause of action for assault. After a subsequent bench trial on the equitable claims, the court granted Van Taylor a partial injunction, the Ivies an equitable easement, and found that the Ivies did not have an ownership interest in the wall.

In this appeal, Van Taylor contends that reversible errors occurred during the jury trial and bench trial. Van Taylor asserts the jury's $2,000 damages award on his trespass and nuisance claims was insufficient. He further complains that the court erred in instructing the jury and granting a nonsuit on his assault cause of action. Van Taylor also claims that in the bench trial, the court: (1) ignored this court's directives from the prior appeals concerning the equitable claims; (2) entered an order that

---

[1] Mr. Van Taylor and Mr. Ivie are lawyers.

conflicted with the jury's verdict; and (3) erred in failing to award him additional damages. Finally, Van Taylor contends that he was entitled to an award of litigation costs. In the cross-appeal, the Ivies challenge the court's failure to grant a judgment notwithstanding the verdict (JNOV) on their cause of action for a prescriptive easement and the court's ruling in the bench trial denying them an ownership interest in the wall. As we shall explain, the parties have not demonstrated reversible error. Accordingly, we affirm the judgment and the order denying JNOV.

## FACTS AND PROCEDURAL BACKGROUND

### 1. The Parties and the Property

Since April 1988, Van Taylor has owned a home on the property (known as "Lot 35") next door to the Ivies' home on South Halm Avenue in a residential neighborhood of Ladera Heights, an unincorporated area in Los Angeles County. The Ivies purchased their property (known as "Lot 34") in June 2000.[2] Lot 34 and Lot 35 were developed and the parties' homes were built in the mid-1960s.

The legal property line between Lot 34 and Lot 35 is a straight line running east to west, approximately 116.54 feet

---

[2] The fact references are taken from the record filed in this appeal and from this court's prior opinions in 2005 (*Van Taylor v. Ivie* (May 23, 2005, B167277) [nonpub. opn.] (*Van Taylor I*), and in 2012 (*Van Taylor v. Ivie* (Nov. 19, 2012, B206761 & B225934) [nonpub. opn.] (*Van Taylor II*).) Our 2014 opinion involved a court-ordered inspection of a fence and Van Taylor's allegations against Rickey Ivie, his law partner, and an arborist, for assault and invasion of privacy during the inspection; the facts underlying the 2014 appeal are not relevant to this appeal. (See *Van Taylor v. Ivie* (Feb. 13, 2014, B239275) [nonpub. opn.].)

from the front to the back of the lots. Lot 35 is south of the legal property line, and Lot 34 is north of the line. A hedge of vegetation grows approximately 40.5 feet along the north side of the property line from the sidewalk to the front of the homes. A six-foot-tall fence constructed of masonry blocks (the "wall") divides the lots and runs parallel to the boundary line for approximately 77 feet to the back of the lots.[3] The original owners of Lot 34, the Heisers, placed a wooden gate between the corner of the front of their home and the wall. In the 1980s, the second owner of the home on Lot 34, the Frattos, replaced the wooden gate with a wrought iron gate.

The upright stem of the wall and approximately four inches of land (the "land") immediately north of the wall, running the wall's length, are located south of the legal property line. Thus, the wall and the land are entirely on Lot 35, Van Taylor's property. However, part of the wall's subterranean foundation extends three to six inches across the legal property line into Lot 34, the Ivies' property. During the years before the Ivies purchased Lot 34, trees, including a pear tree, vegetation, electrical outlets, pipes, metal boxes, the wrought iron gate, and other items serving Lot 34, had been placed on the land or attached to the north side of the wall.

---

[3] The wall consists of two components: the six-foot high upright section—the stem—and a subterranean concrete foundation which supports the stem; together the stem and the foundation form the shape of an upside down "T". The foundation is attached to the wall at the base of the stem and from the base of the stem approximately eight inches of the foundation extends underground on both sides of the wall for the length of the wall.

## 2. The Dispute

In March of 2001, this dispute began when Van Taylor and the Ivies discussed Van Taylor's desire to raise the wall's height. Van Taylor asked the Ivies to trim the pear tree branches overhanging the wall into his yard. The Ivies refused because they were concerned that cutting the tree might harm it. Van Taylor told the Ivies that he believed that he owned the block wall and the land next to it because they were located entirely on Lot 35. Subsequently, the Ivies commissioned a survey that confirmed Van Taylor's statement about the legal property line's location.

After that, the Ivies agreed to trim the pear tree to allow Van Taylor to increase the wall's height. However, when the Ivies and Van Taylor subsequently inspected the Ivies' backyard next to the wall, Van Taylor requested that the Ivies remove the pear tree because he believed it was growing against the block wall, damaging it. The Ivies trimmed the pear tree but refused to remove it. In December 2001, Van Taylor served a written demand on the Ivies, requesting that they remove all trees, vegetation, electrical equipment, and other items from the wall and the land.

## 3. The First Trial

In February 2002, Van Taylor filed a lawsuit against the Ivies for (1) intentional infliction of emotional distress, (2) trespass, (3) negligent trespass, (4) nuisance, and (5) quiet title. (Super. Ct. Los Angeles County, No. BC268576). He sought a declaration that he was the legal owner of the wall and the land and that the Ivies had no right or interest in the property. He sought compensatory and punitive damages and a permanent

injunction directing the Ivies to remove the trees, vegetation from the land, and other items attached to the wall.

In April 2002, the Ivies filed a cross-complaint against Van Taylor seeking declaratory relief and an equitable easement or prescriptive easement. At the time, the Ivies did not claim an ownership interest in the wall; the cross-complaint acknowledged that Van Taylor's predecessors who owned Lot 35 constructed the wall. The Ivies' request for an easement was limited to using the wall and the land next to the wall to maintain the pear tree, vegetation, and other attachments to the wall. They alleged that they and the two prior owners of Lot 34 (the Heisers and the Frattos) had used and maintained the land north of the wall openly, continuously, and adversely for many years.

In February 2003, the court bifurcated the trial and heard the equitable issues first, without a jury. In March 2003, after the bench trial, the court made numerous factual findings, including that (1) a prior owner of Lot 35 built the fence in the mid-1960s, at or about the time the homes were constructed; (2) the owners of Lot 34 had used and maintained the north side of the fence and the narrow strip of land north of the wall for over 30 years; and (3) the upright portion, or stem, of the wall was on Lot 35, while the foundation extended up between four and five inches onto Lot 34.[4]

The judgment declared the fence a "party wall," entitling the Ivies to a nonexclusive easement to use and maintain the wall and the land north of the wall. The court further found that the Ivies and Van Taylor jointly owned the pear tree. The

---

[4] After the trial, the Ivies stated that they did not intend to pursue the prescriptive easement.

judgment also awarded Van Taylor $500 in damages, but denied the nuisance and trespass claims, request for injunctive relief, and found all other issues moot. Van Taylor appealed the judgment.[5]

### 4.  *Van Taylor I*

Among his contentions on appeal, Van Taylor complained that the trial court erred in finding that the wall was a "party wall," that the Ivies had failed to establish grounds for an equitable easement, and that the court erred in failing to find that the Ivies committed trespass or a nuisance. Van Taylor further argued that he was entitled to an injunction and a judgment on the Ivies' prescriptive easement claim because the Ivies had abandoned it.

This court affirmed in part[6] and reversed in part, and remanded the matter to the trial court. We concluded that the

---

[5] In October 2004, while the appeal was pending, the Ivies filed a separate lawsuit against Van Taylor (Super. Ct. Los Angeles County, No. BC317765) asserting tort claims, alleging that in the fall of 2003 Van Taylor had poisoned the pear tree and other plants north of the fence and that Van Taylor had harassed them. The Ivies also obtained a restraining order against Van Taylor. Van Taylor filed a cross-complaint against the Ivies alleging intentional infliction of emotional distress, assault, trespass, nuisance, and sought an injunction based on claims that in March 2003 the Ivies had attached a wooden lattice to the block wall and that the pear tree, shrubs, and other items continued to encroach on his property. The parties settled the Ivies' complaint in BC317765. The trial court subsequently ordered all the cases between the parties, including Van Taylor's cross-complaint in BC317765, consolidated and related for all purposes.

[6] This court affirmed the trial court's order rejecting Van Taylor's emotional distress cause of action.

wall did not qualify as a "party wall" as a matter of law because "it is not a wall common to adjoining buildings and does not provide support for adjoining buildings." We reversed the trial court's order for an easement for the Ivies and its summary rejection of Van Taylor's other claims. Finally, we stated that because the Ivies had abandoned their cause of action for a prescriptive easement, Van Taylor was entitled to judgment in his favor on the claim.[7]

This court guided the trial court on remand. We stated that Van Taylor's ability to obtain injunctive relief would depend on whether he could prove the torts of continuing trespass or nuisance. And if shown, the trial court should then consider whether to grant an injunction. We instructed the trial court to consider the equities and the relative hardships to both parties and then decide whether to issue an injunction, noting that the trial court should address the question of an equitable easement only if it denied an injunction. We also stated that the trial court must decide whether to declare an equitable easement before ruling on the merits of the quiet title cause of action.

5.    **The Second Trial**

In 2007, the Ivies located their home's original owner, Mrs. June Heiser, who, along with her late husband, had purchased

---

[7] In November 2005, after remand to the trial court, the Ivies filed a motion for relief from default on their cause of action for a prescriptive easement. Their attorney declared that she withdrew the claim in the first trial after the trial court had announced its finding that the fence was a party wall and that she did so because she mistakenly believed that a prescriptive easement was duplicative of other relief awarded by the court. The trial court granted the motion, which allowed the Ivies to revive their claim.

the undeveloped Lot 34 in 1964. According to Mrs. Heiser, she and her husband built the home, put in a pool, and moved into the house in 1966. Mrs. Heiser could not recall whether the home on Lot 35 had already been built when she and her husband built their home on Lot 34, nor could she remember whether the wall between the lots had already been constructed at the time. She assumed that her husband had arranged to have the wall constructed. She acknowledged, however, that the fences on the other two sides of her property were constructed of different material and in a different style than the wall between Lot 34 and Lot 35. She stated that she and her husband used their backyard up to the wall, believing that everything enclosed in the backyard was their property.

Van Taylor filed a motion for summary judgment. The trial court granted the motion in part. The court concluded as a matter of law that the Ivies could not prove that their use of the wall and the land was hostile and under a claim of right, as necessary to establish a prescriptive easement. The court also rejected the Ivies' request for an equitable easement, concluding that Van Taylor had suffered more significant hardships than the Ivies. Concerning the counts alleged in Van Taylor's complaint, the court denied the motion concluding that triable issues of fact existed as to those claims.

Before the second trial, the court ruled that its order on the prescriptive and equitable easement claims compelled the court to enter judgment for Van Taylor on his quiet title claim. The court also ruled that prior restraining orders issued against Van Taylor effectively resolved Van Taylor's assault claim. The court bifurcated the trial on the remaining causes of action.

9

In October 2007, the case proceeded to a jury trial on Van Taylor's causes of action for trespass and nuisance. After hearing the testimony and evidence, the jury returned a special verdict in favor of the Ivies. In the subsequent bench trial, the trial court granted Van Taylor a permanent injunction and required that the Ivies remove certain items attached to the wall and other items that had encroached onto the land. The trial court did not, however, grant any monetary damages to Van Taylor. The Ivies and Van Taylor appealed.

### 6.    *Van Taylor II*

On appeal, Van Taylor assailed the court's jury instructions on his counts for trespass and nuisance, and the court's order preventing him from proceeding on his assault cause of action. In the Ivies' appeal, they challenged the court's order granting summary judgment, the order granting an injunction, and the quiet title. They also argued that the evidence demonstrated they were joint owners of the wall.

This court reversed and remanded. In *Van Taylor II*, we concluded that Van Taylor was not entitled to a summary judgment. Concerning the prescriptive easement, we concluded that the trial court had misinterpreted the "adverse use" element of the claim when it concluded that the Ivies could not prove their entitlement to a prescriptive easement as a matter of law.[8]

---

[8] We held that the trial court erred in finding that the Ivies could not prove the "adverse use" based on the prior owner's mistaken belief that he owned the land. We pointed out: "use of the property under a mistaken belief that he owned the property constitutes adverse use, and his failure to affirmatively assert a hostile claim [to Van Taylor] is irrelevant."

Concerning the equitable easement, we held that a triable issue of fact existed based on conflicting evidence "as to the extent to which the Ivies' use of Van Taylor's property has interfered with the use and enjoyment of his property, the diminution in value of his property resulting from the Ivies' use and other damages caused by the Ivies' use." This court also reversed the judgment for Van Taylor on his claim for quiet title. We further concluded that the trial court improperly dismissed the assault and intentional infliction of emotional distress claims based on an erroneous application of collateral estoppel.

In addition, we also reversed the judgment for the Ivies on the trespass and nuisance causes of action. We concluded that the jury instruction and the special verdict form were prejudicially misleading—that the jury instruction erroneously implied that to prevail on his claim of trespass and nuisance, Van Taylor had to prove that he owned, occupied, controlled, *and* exclusively possessed the property. We also held that based on evidence: "There can be no reasonable doubt that Van Taylor actually occupies the property and that his possessory interest is sufficient to maintain an action for trespass. It is undisputed that the Ivies have encroached on the thin strip of Van Taylor's land north of the fence and that they intentionally entered the property. It is also undisputed that vegetation from the Ivies' pear tree has fallen on Van Taylor's property south of the fence, which provides another basis to establish" liability if the other elements of the claims are met. Consequently, we concluded that on remand, the trial court must instruct the jury that the first element of trespass and nuisance relating to the ownership, occupancy, or possession of the property was conclusively established.

11

This court also held that the trial court erred in entering a permanent injunction for Van Taylor because he had not prevailed on any underlying tort cause of action in the jury trial. We reiterated this court's direction in *Van Taylor I* that the trial court first must consider the relative hardships and decide whether to issue an injunction and should address the question of an equitable easement only if it denies an injunction. We held that on remand, the trial court could award a permanent injunction only if Van Taylor established the elements of a tort cause of action and the trial court, after considering the relative hardships, found grounds for equitable relief. Finally, we observed that all the other contentions raised on appeal were moot in light of this court's conclusions.

## 7.    The Third Trial

On remand, the trial court ordered that Van Taylor's claims for trespass, nuisance, and assault, and the Ivies' prescriptive easement claim, be tried to a jury, followed by a bench trial on Van Taylor's claim for quiet title and a permanent injunction and the Ivies' request for an equitable easement.

The jury trial began in February 2016. During his case in chief, Van Taylor presented evidence that the vegetation, including vines, plants, the pear tree, and other trees, concrete pavers, a concrete curb, and dirt had been placed next to the land on Lot 35. Van Taylor also claimed that in 2005, the Ivies or their gardener had entered his property without his permission to trim the pear tree.

Van Taylor further testified that before the Ivies purchased the property, he had never been inside the backyard of Lot 34. Van Taylor conceded that he had trimmed the trees and other vegetation that had grown from Lot 34 over the wall into his

backyard. However, until the dispute arose with the Ivies, he did not know that the trees and vegetation were growing on the wall or on to the land immediately north of it. He was also unaware that items were attached to the north face of the wall.

Van Taylor also presented evidence that he believed showed the pear tree, other vegetation, roots, and water from the Ivies' landscaping had damaged the wall, the drain pipes on his property, and the foundation of his house. Van Taylor presented an expert engineer who estimated that the trees and vegetation on Lot 34 caused $55,000 in damage to the wall and Van Taylor's home's foundation.

The Ivies presented evidence that they and the prior owners of Lot 34 were unaware of the legal boundary line's location between the lots. At the time of purchase, the Ivies were informed that the block wall was a "common wall." Until 2001, all of the owners of Lot 34 assumed that they owned the land within their enclosed backyard, and they used and maintained the wall and the land immediately next to it. The Ivies also presented evidence that in the 13 years before they purchased the property, Van Taylor had never complained to the prior owners of Lot 34 about how they had used the wall or land next to it. The Ivies also presented evidence that the only items they had placed on the wall or land were the wooden lattice they attached to the wall in 2003 and a sheet of fiberglass that they attached to the front wrought iron gate in 2005.[9] They also denied that they or their gardener entered Van Taylor's yard in 2005 to trim the pear tree;

---

[9] The fiberglass sheet was not attached to the wall. According to Van Taylor, the fiberglass sheet blocked his view inside the Ivies' backyard, and it "crossed into" his property because it was positioned on the gate about one inch from the wall.

13

the Ivies testified that the gardener remained on their property when he trimmed the tree.

The jury also heard evidence concerning the parties' respective ownership claims to the wall and its construction method. Mr. Fratto, who sold the home to the Ivies, testified that he never claimed to own the wall but assumed his property extended to the wall's face. Van Taylor presented evidence that the wall was constructed of similar material and style as the other walls enclosing his property; however, the other fences enclosing the Ivies' property did not match the wall in style or construction. The court permitted the Ivies to read Mrs. Heiser's deposition testimony to the jury. The Ivies' construction experts opined that the construction method for the wall would likely have required the coordination and cooperation of the owners of Lot 34 and Lot 35.

As to his damages, Van Taylor presented evidence from his real estate and property appraisal experts. Van Taylor's appraiser estimated that the reasonable rental value for the property at issue, which he assumed was 462 square feet, amounted to approximately $217.14 a month for a total of $38,000 for a period between 2001 and 2015. Van Taylor's real estate expert testified that because of the litigation, Van Taylor lost an opportunity to sell his home in 2006, and that the home was worth $1,000,000 more in 2006 than in 2015.

The Ivies' real estate expert disputed and contradicted Van Taylor's damage evidence. The expert opined that the diminution in value of Van Taylor's property and the land was approximately $2,008 based on the value of the property and the size of the land: 19 square feet next to the wall running from the front gate to the back of the lots.

14

Concerning Van Taylor's assault cause of action, both Mr. Ivie and Van Taylor testified that in August 2005, they were involved in a confrontation in which they argued and shouted threats and expletives at each other as they stood in front of their respective homes. Neither man displayed a weapon nor used threatening gestures, and they remained approximately 15 feet apart throughout the confrontation. At the end of the presentation of the evidence, the Ivies made an oral motion for nonsuit on Van Taylor's assault claim, which the court granted.

After the parties rested, the court instructed the jury. Following this court's directive in *Van Taylor II,* the trial court instructed the jury that the first element of trespass and nuisance had been conclusively established. In February 2017, the jury returned a special verdict for Van Taylor on the trespass and nuisance claims. The jury did not, however, make special findings or identify the conduct that constituted trespass or nuisance. The jury also returned a verdict for Van Taylor on the Ivies' prescriptive easement cause of action, awarded Van Taylor $2,000 in economic damages, and denied him non-economic damages and punitive damages.

On March 11, 2016, the court commenced the bench trial on the equitable causes of action. The court indicated that although it was bound by the jury's factual determinations and would consider the evidence presented in the jury trial relevant to the equitable claims, it would accept additional evidence and argument on the equitable claims. Van Taylor chose not to offer any additional evidence. Van Taylor argued that the relative hardships favored him because he believed he could never sell his home if the court granted the Ivies an easement. The Ivies presented evidence of their economic and non-economic hardships

if they had to build a new wall or move the trees, equipment, and other vegetation on the land or attached to the wall. Their experts also testified that building a new wall in the Ivies' backyard would cost more than $150,000 and leave a portion of the Ivies' property inaccessible.

After both sides rested, the trial court issued its statement of decision. The court granted Van Taylor an injunction in part, issuing an order requiring the Ivies to remove the wooden lattice they had attached to the fence in 2003. In addition, the court ordered that the Ivies could not place new or additional attachments to the wall but denied the injunction as to the other items already on the land and attached to the wall. The court rejected Van Taylor's argument that the Ivies' conduct could be described as "willful." The court found most of the items that Van Taylor wanted the Ivies to remove had been placed on the wall and land by the prior owners of Lot 34, who believed they had a right to use the land next to the wall. As for the fiberglass that the Ivies had placed on the front gate in 2005, the court concluded that Van Taylor had not shown that the minimal encroachment harmed him.

The trial court granted an equitable easement, permitting the Ivies to retain the existing attachments to the wall and the plants, trees, vegetation, and dirt on the land. On the issue of damages, the court observed that Van Taylor had argued that he had suffered significant damage in the jury trial but that the jury had awarded him only $2,000. The court concluded that based on the evidence presented, the $2,000 awarded by the jury adequately compensated Van Taylor for the use of the property.

The court also rejected the Ivies' request for a finding that the wall was jointly owned. The court observed that such a

16

finding would be contrary to the evidence presented in the trial and the prior appellate opinions in the case. Finally, the court declined to award costs to either party.

In August 2016, the trial court entered the judgment. Van Taylor subsequently filed a motion for a new trial and a JNOV. Van Taylor, among various arguments, complained that the damages were inadequate, that the jury's verdicts were not supported by the evidence, and that the court's conclusions in the bench trial were erroneous. The Ivies filed a motion for a JNOV, assailing the jury's verdict rejecting their prescriptive easement.

In February 2017, the trial court denied the motions, concluding that neither Van Taylor nor the Ivies had demonstrated that the verdicts lacked substantial evidentiary support or that its orders were erroneous.

Van Taylor timely appealed, and the Ivies filed a timely cross-appeal.

## CONTENTIONS

On appeal, Van Taylor asserts that the trial court erred in failing to grant him a new trial or a JNOV. Specifically, Van Taylor argues that the jury's damages award on his trespass and nuisance claims was insufficient. He contends the jury should have awarded him damages for rental value, compensation for the diminution in value of his property, and his inability to sell his home, as well as non-economic damages. He further complains that the trial court erred in instructing the jury and granting the Ivies a nonsuit on his assault cause of action. Concerning the bench trial, Van Taylor claims that the trial court: (1) ignored this court's directives in *Van Taylor II* concerning the order in which the trial court should consider the equitable claims; (2) entered an order on the equitable claims

17

that conflicted with the jury's verdict; and (3) erred in failing to award him additional damages. Finally, Van Taylor contends he was entitled to an award of litigation costs.

In the cross-appeal, the Ivies challenge the jury's verdict for Van Taylor on their cause of action for prescriptive easement and the trial court's conclusion that they did not have an ownership interest in the wall.

We address the issues raised in the appeal and cross-appeal seriatim.

## DISCUSSION

### 1.    Standards of Review

Motions for a new trial and JNOV constitute different procedures for "obtain[ing] a judgment contrary to the verdict rendered by a jury." (*Teitel v. First Los Angeles Bank* (1991) 231 Cal.App.3d 1593, 1602.)

A new trial motion provides the trial judge with discretion to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences contrary to that of the jury. (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 751 (*Fountain Valley*).) The trial court's decision to deny a new trial is reviewed for an abuse of discretion, except that the factual determinations are reviewed for substantial evidence. (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 506.) Under the substantial evidence standard of review, when the trier of fact's determinations are attacked on the ground that there is no substantial evidence to sustain them, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will

18

support the fact finder's determinations. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.) In addition, when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (*Ibid*.) Applying the substantial evidence standard of review, this court resolves every favorable inference and all conflicts in the evidence in favor of the party who prevailed on the issue. (See *Kephart v. Genuity, Inc*. (2006) 136 Cal.App.4th 280, 291.)

In contrast, JNOV motions permit a party to prevail when the evidence is legally insufficient to support the verdict. (*Fountain Valley, supra,* 67 Cal.App.4th at p. 751.) Thus, a trial court may grant a JNOV motion if there is no substantial evidence to support the verdict. (*Tognazzini v. San Luis Coastal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1057–1058.) In deciding whether to grant the motion, the trial court cannot weigh the evidence or assess credibility. (*Castro v. State of California* (1981) 114 Cal.App.3d 503, 512.) The court views the evidence in the light most favorable to the verdict, disregards conflicting evidence, and indulges in every legitimate inference to support the verdict. (*Paykar Construction, Inc. v. Spilat Construction Corp.* (2001) 92 Cal.App.4th 488, 493–494) "On appeal, we determine de novo whether there is substantial evidence to support the verdict and whether the moving party is entitled to judgment in its favor as a matter of law." (*Id.* at p. 494.)

## 2.     Van Taylor's Appeal

Before this court, Van Taylor claims that errors in the jury and bench trials require reversal of the judgment and remand for a new trial. As we shall explain, Van Taylor has failed to

19

demonstrate reversible error occurred during any phase of the trial court proceedings.

### 2.1. Jury Trial Phase

In Van Taylor's appeal from the jury trial, he complains that the jury's verdicts on the trespass and nuisance claims were inadequate; he maintains that substantial evidence compelled an award of additional damages. He also contends the court erred in failing to give particular jury instructions and granting the Ivies a nonsuit on his assault cause of action.

### 2.1.1. Substantial evidence supported the jury's award of damages on Van Taylor's trespass and nuisance claims.

Van Taylor assails the jury's verdict awarding him only $2,000 in damages on his trespass and nuisance causes of actions. He argues that the trial court should have granted him a new trial because the jury's award reflects that it failed to consider his inability to sell his house and the diminution in value of his property. He also contends the jury should have awarded him rental value for the land and the wall and an award of non-economic damages. We disagree.

The trial court gave the parties a full and fair opportunity to present their evidence during the jury trial. Van Taylor presented expert opinion on the harm to his property and evidence of his purported economic and non-economic damages. He argued that his property's value diminished by more than $1,000,000 and asserted that he could not sell the home. He sought an award for damage to the wall, his drain pipes, his home, as well as lost rents and other fees to clean up and repair the property.

20

The Ivies presented evidence and experts to counter and contradict Van Taylor's arguments and evidence. The Ivies' experts testified that the Ivies' use of the land and the wall did not harm Van Taylor or damage his property. Moreover, the Ivies' real estate experts assessed the diminution in value for the land and wall approximately at $2,000, and they assailed Van Taylor's claim that he could not sell his home.

Van Taylor has not shown that the jury failed to consider his evidence and arguments. Instead, based on the trial's record, it is clear that the jury rejected Van Taylor's version of the case. To the extent the evidence at trial conflicted, the jury resolved the conflicts in the Ivies' favor. The jury, acting as the trier of fact, was free to discard facts inconsistent with its conclusion.

In addition, Van Taylor has not convinced us that the evidence that the jury believed was incredible, unreasonable, or improbable. The jury's verdict awarding Van Taylor $2,000 was consistent with the evidence presented. Moreover, we see no error in the jury's rejection of Van Taylor's claim for additional damages such as rental value or his contention that he could not sell his home. He has also failed to present any persuasive argument that the jury erred in failing to award any non-economic damages or punitive damages.

" ' "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. … And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." [Citation.]' " (*Reynaud v. Technicolor Creative Services USA, Inc.* (2020) 46 Cal.App.5th 1007, 1017.) Because substantial evidence supported the jury's

verdict on the trespass and nuisance causes of action, we conclude the trial court did not err in denying Van Taylor a new trial or denying his motion for a JNOV on the claims.

### 2.1.2. Van Taylor abandoned his claim of error about the jury instructions.

Rule 8.204(a)(1)(B) of the California Rules of Court provides that each point in an appellate brief must be supported by argument and, if possible, by the citation of authority. "An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. ... It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant ... asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citation.]" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. omitted; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary."].)

Van Taylor argues that the trial court erred when it refused to give the jury particular legal instructions that he had requested.[10] However, Van Taylor abandoned any claim of error

---

[10] Specifically he complains that the court should have given the following special instructions: No. 9: the definition of adverse possession; No. 15: Civil Code section 3517-wrongdoers cannot take advantage of own wrong; No. 22: damages for restoration and market value loss from trespass; No. 24: liability for success owners for nuisance created by prior owner; No. 29: emotional distress damages

as to these instructions because he did not present any specific argument supported by references to the law or evidence as to why the court erred in failing to give them. Consequently, we do not reach the merits of his complaints about the jury instructions.

### 2.1.3. The trial court properly granted a nonsuit for the Ivies on Van Taylor's assault cause of action.

Van Taylor's assault cause of action was based on an August 2005 confrontation between Van Taylor and Mr. Ivie. The undisputed evidence presented at trial showed that Van Taylor and Mr. Ivie shouted threats and expletives at each other as they stood at least 15 feet apart in front of their respective homes. They had no physical contact during the incident, and neither man displayed a weapon or used threatening gestures. At the end of the presentation of the evidence, the trial court granted the Ivies' motion for nonsuit on the assault cause of action.

On appeal, Van Taylor argues that he presented sufficient evidence to submit the claim to the jury, and thus, the court erred in granting a nonsuit. He also complains that the trial court erred by applying the criminal law definition of assault and erred in failing to consider his fear of anticipated harm during the confrontation. We disagree.

A defendant is entitled to a nonsuit if the evidence is insufficient for a jury to find in the plaintiff's favor. (Code Civ.

---

allowed for nuisance; No. 34: damages allowed for unanticipated injury in tort; No. 35: emotional distress damages for trespass and nuisance; No. 36: flexibility in awarding emotional distress damages for trespass; No. 37: Civil Code section 3334-loss of use damages and cost of restoration damages; No. 52: Civil Code section 3294(a)-punitive damages allowed for oppressive and malicious conduct; and No. 53: definition of malice in encroachment cases.

Proc., § 581c, subd. (a).) "In determining whether the plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded." (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118.)

" ' "[A]n assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." ' " (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1604 (*Plotnik*), quoting *Lowry v. Standard Oil Co.* (1944) 63 Cal.App.2d 1, 6–7.) To prevail, the plaintiff must prove, among other elements, that the plaintiff reasonably believed that the defendant was about to touch the plaintiff in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat. (See CACI No. 1301; *Plotnik,* at pp.1603–1604.)

As the appellate court observed in *Plotnik,* in tort actions for assault, the courts assume that the Penal Code section 240 definition of assault applies. (*Plotnik, supra,* 208 Cal.App.4th at pp. 1603–1604; see also 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 381, p. 598.) Penal Code section 240 defines the crime of assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Furthermore, although apprehension of that contact is the basis of assault, " '[m]ere words, however threatening, will not amount to an assault. [Citations.]' (5 Witkin, Summary of Cal. Law, supra, Torts, § 383, pp. 599–600.)" (*Plotnik*, at p. 1604.)

In *Plotnik*, for example, the defendants aggressively approached the plaintiff and threatened to kill him and the family dog. Defendants did not, however, display a weapon or

24

otherwise attempt to touch the plaintiff. Although the defendants' words were aggressive and threatening, neither committed an act that could inflict immediate injury. Consequently, the court concluded the evidence was legally insufficient to support a judgment for the plaintiff on the assault cause of action. (*Plotnik, supra,* 208 Cal.App.4th p. 1604.)

Following *Plotnik,* we conclude that the trial court properly considered the criminal law definition of assault in assessing Van Taylor's claim. In addition, even viewing the evidence in a light favorable to Van Taylor and accepting it as true, Van Taylor failed to present sufficient evidence of the required elements of the assault for a jury to find in his favor. As in *Plotnik*, the situation here did not involve physical contact or weapons. Mr. Ivie directed angry words at Van Taylor from 15 feet away. Van Taylor did not present any evidence that Mr. Ivie could inflict immediate injury, nor did Van Taylor show that his belief that Mr. Ivie was about to touch him in a harmful or offensive manner was reasonable. Thus, the trial court properly granted the nonsuit on the assault cause of action.

### 2.2. Bench Trial Phase

Van Taylor assails the order in which the trial court considered the issues in the bench trial. He claims that the trial court violated this court's prior directives in *Van Taylor II* and argues the trial court's statement of decision conflicted with the jury's verdict. Finally, he complains the trial court should have awarded litigation costs.

25

### 2.2.1. The trial court's conduct and consideration of the equitable claims did not ignore this court's instructions.

In *Van Taylor II*, we held that on remand, the trial court "must consider the relative hardships to the parties and decide whether to issue an injunction before deciding whether to declare an equitable easement in favor of the Ivies, and that the court could declare an equitable easement in favor of the Ivies only if it denied an injunction."

Here, Van Taylor asserts that the trial court failed to consider his hardships and erred in failing to consider his claim for injunctive relief before considering the Ivies' claim for an equitable easement. Van Taylor's assertions fail.

Based on the bench trial record, we are not convinced that the trial court disregarded this court's directives, ignored the evidence, or that the trial court's method of considering the equitable claims prejudiced Van Taylor. Both the trial court's remarks during the bench trial and statement of decision disclose that the court considered the evidence and arguments Van Taylor presented in support of the injunction before turning to the Ivies' equitable claims. At the outset of the bench trial, the court stated that it would consider all the evidence Van Taylor presented during the jury trial as to his hardships. The court also offered Van Taylor the opportunity, which he expressly declined, to present additional evidence of his hardships. Instead, Van Taylor relied on the evidence presented during the jury trial. He argued that the damage to the property, its diminution in value, and his alleged inability to sell his house supported his request for a permanent injunction. The reporter's transcript of the bench trial

26

shows that the trial court properly considered that evidence and Van Taylor's arguments.

Furthermore, as the trial court's statement of decision shows, the court addressed Van Taylor's request for an injunction first; it awarded him a partial injunction on the wooden lattice that the Ivies attached to the wall in 2003, and it issued an order preventing the Ivies from placing any new items on the land or attaching additional items to the wall. The court's decision also described Van Taylor's evidence of hardships before describing the Ivies' evidence. The court's analysis thus implies that the court weighed the relative hardships regarding the injunction prior to considering the request for an easement.

In short, Van Taylor has not convinced us that the trial court ignored his evidence or arguments. Likewise, he has not demonstrated that the order in which the trial court considered the claims violated this court's directives.

### 2.2.2. The court's statement of decision did not conflict with the jury's verdicts.

Van Taylor argues that based on the jury's verdicts on the trespass and nuisance causes of action the court could not, as a matter of law, consider the Ivies' hardships on the equitable claims, and he was entitled to judgment on those claims. Specifically, he maintains that the court's failure to enter judgment in his favor on all the equitable causes of action and the court's consideration of the Ivies' hardships conflicted with the jury's verdicts. Neither of these contentions has merit.

### a. The court properly considered the Ivies' hardships.

In Van Taylor's view, the court should not have considered the Ivies' hardships when deciding the equitable claims. He points out that under *Christensen v. Tucker* (1952) 114 Cal.App.2d 554, 562 (*Christensen*), defendants who "willfully" trespass cannot ask that the trial court consider their hardships in determining whether to grant them equitable relief. Van Taylor argues that, by concluding that the Ivies trespassed, the jury necessarily found that the Ivies' conduct was "willful," and thus the court erred in considering their hardships. In our view, Van Taylor misinterprets the law, and the evidence in this case does not support his position.

In *Christensen,* the appellate court identified the conditions for the trial court to exercise its discretion to issue an equitable easement, including that the "[d]efendant must be innocent—the encroachment must not be the result of defendant's willful act, and perhaps not the result of defendant's negligence. In this same connection the court should weigh the plaintiff's conduct to ascertain if he is in any way responsible for the situation." (*Christensen, supra,* 114 Cal.App.2d at p. 563.)

*Christensen* cannot be viewed in isolation. Even before *Christensen*, California courts recognized that consideration of an encroacher's hardships was permitted where the trespass resulted from inadvertence or mistake. (See *Ukhtomski v. Tioga Mutual Water Co.* (1936) 12 Cal.App.2d 726, 728–729; *Blackfield v. Thomas Allec Corp.* (1932) 128 Cal.App. 348, 350 [characterizing the defendant's trespass as an "innocent mistake"]; *Morgan v. Veach* (1943) 59 Cal.App.2d 682, 690 [describing the defendant's " 'innocent mistake or oversight' "];

28

*Felsenthal v. Warring* (1919) 40 Cal.App. 119, 128 [stating that the trespass must be the result of an "innocent mistake of fact"].)

In addition, cases after *Christensen* recognized that trial courts have broad discretion to determine an encroacher's "innocence," based on the evidence in the case. For example, in *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 266 (*Linthicum*), the court recognized an element of "willfulness" of the encroaching party exists in every case of encroachment in the sense that the encroaching party intended to install a house or a fence and intended to use the property in dispute. Moreover, arguably in every case of trespass, the encroaching party was "negligent" in some sense if, for instance, it failed to have a property line survey done before installing the improvements. Thus, the court held: "The question whether defendant's conduct is so egregious as to be willful or whether the quantum of defendant's negligence is so great as to justify an injunction is a matter best left to the sound discretion of the trial court." (*Id.* at p. 267)

Based on our interpretation of the law and the evidence in this case, we conclude that the jury's verdict for Van Taylor on the trespass claim did not preclude the trial court from exercising its discretion to consider the Ivies' hardships. The jury's verdicts did not identify which of the Ivies' actions, if any, were "willful." Indeed, given the evidence presented at trial, the jury could have based its verdicts on conduct that was not willful. The evidence showed that many encroaching actions were inadvertent or the result of an innocent mistake of fact. The prior owners of Lot 34 placed most of the items encroaching on Van Taylor's property under the belief that they owned the land and had an interest in the wall.

Moreover, to the extent that the Ivies engaged in conduct that could arguably be characterized as "willful," such as attaching the wooden lattice to the wall and the fiberglass to the front gate, Van Taylor did not demonstrate prejudicial, reversible error. The court granted the injunction requiring the Ivies to remove the lattice. The court denied the injunction as to the fiberglass, finding that the encroachment was so minimal that it did not harm Van Taylor. Accordingly, given the evidence and the verdicts, we conclude the court did not err in considering the Ivies' hardships on the equitable claims.

### b. The jury's verdicts did not require the court to enter judgment for Van Taylor on his equitable claims.

Where, as here, the legal claims are first tried by a jury and equitable claims later tried by a judge, the trial court must follow the jury's factual determinations on the issues of fact litigated and necessary to the result. (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 158, citing *Los Angeles Police Protective League v. Gates* (9th Cir. 1993) 995 F.2d 1469, 1473.) But, the court's legal determinations remain separate. (*Hoopes,* at p. 158.)

Van Taylor contends that the jury's verdicts on the trespass and nuisance causes of action entitled him to judgment, as matter of law, on his quiet title claim and a permanent injunction. We disagree.

Although the jury found for Van Taylor on the prescriptive easement, trespass, and nuisance claims, the jury was not presented with a special verdict in which they were required to identify the tortious conduct. The verdicts did not identify any specific factual basis of the jury's decision. Thus, nothing in the

jury's verdicts conclusively determined Van Taylor's entitlement to his quiet title or the injunction. Indeed, the legal causes of action and equitable claims are distinct with separate legal elements. For example, the injunction request required the court to weigh the parties' respective hardships—a matter outside the province of the jury's determination. Thus, we find no inherent inconsistency between the court's ruling on the equitable claims and the jury's verdicts. Van Taylor has not shown as a matter of law that the jury's verdicts compelled the court to enter a judgment for Van Taylor on his equitable claims.

### 2.2.3. The court did not err in failing to award Van Taylor damages when it granted the Ivies an equitable easement.

Van Taylor asserts that because the court granted the Ivies an equitable easement, the court was also required to award him damages in addition to those the jury awarded for the trespass. Not so.

In *Linthicum,* the appellate court held the trial court is not required to order additional damages when the trial court creates an easement by denying an injunction. (*Linthicum, supra,* 175 Cal.App.4th at p. 268 [awarding an equitable easement, but not an award further damages to the defendant]; see also *Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1014 [holding that the trial court did not err when it failed to award any damages to the plaintiffs in compensation for the equitable easement on their property].)

The *Linthicum* court also recognized that the trial court could not award damages in the abstract. Even where the court grants an easement to the defendant, the plaintiff must prove

damages. (See *Wardrop v. City of Manhattan Beach* (1958) 160 Cal.App.2d 779, 791.)

Here the court permitted Van Taylor to present evidence and argument on his damages, including those he would incur if the court granted the Ivies an easement. The court's statement of decision reflects that the court determined that Van Taylor had not carried his burden to prove that he was entitled to any damages in addition to those that the jury had already awarded. The evidence showed the Ivies' use of the land and the north face of the wall did not cause Van Taylor substantial harm. Under the circumstances, the trial court did not err in failing to award any additional damages to Van Taylor.

### 2.2.4. The trial court did not err in failing to award Van Taylor costs.

Under Code of Civil Procedure section 1032, a "prevailing party" is entitled to recover costs "as a matter of right" unless otherwise provided by statute. (See Code Civ. Proc., § 1032, subd. (b).) If, however, a plaintiff brings an action in superior court and recovers a judgment within the $25,000 jurisdictional limit of the limited jurisdiction court, the trial court has the discretion to deny costs to the plaintiff. (Code Civ. Proc., § 1033, subd. (a); *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 975 [recognizing that if the prevailing party recovers a judgment that could have been rendered in a limited civil case, Code of Civil Procedure section 1033, subdivision (a) provides that costs or any portion of claimed costs shall be as determined by the court in its discretion].)

Likewise, where a party obtains relief in equity, determining whether to award costs is within the discretion of the court under Code of Civil Procedure section 1032, subdivision

(a)(4). (See Code Civ. Proc., § 1032, subd. (a)(4); *Wakefield v. Bohlin* (2006) 145 Cal.App.4th 963, 977 [section 1032, subdivision (a)(4) operates as an express statutory exception to the general rule that a prevailing party is entitled to costs as a matter of right], disapproved on other grounds in *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1338.)

We review the trial court's denial of costs under Code of Civil Procedure sections 1033, subdivision (a) and 1032, subdivision (a)(4) for abuse of discretion. (See *Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815.)

Van Taylor has not demonstrated any error concerning the court's decision denying him litigation costs. First, contrary to his argument on appeal, Van Taylor was not entitled to an award of costs as a matter of law. In this case, the $2,000 award was within jurisdictional amount of the limited civil courts, and the relief the court awarded in the bench trial was equitable. Thus, the request for costs was governed by the Code of Civil Procedure sections that granted the trial court discretion to deny costs. Second, Van Taylor has not shown that the court abused its discretion in denying costs. As the court's order reflects, the results of the trial were mixed. Neither side achieved all the relief they sought. The court's order further reflects that it considered the parties' claims and litigation objectives, deciding to deny costs. Under the circumstances, the court's order does not exceed the bounds of reason.

## 3.    The Ivies' Cross-Appeal

In the cross-appeal, the Ivies challenge the jury's verdict for Van Taylor on their cause of action for a prescriptive easement and the court's finding that they did not have an ownership interest in the wall.

33

### 3.1. Jury Trial Phase

The Ivies argue that the trial court erred in failing to grant them a JNOV on their cause of action for a prescriptive easement on the land and wall. They assert that substantial evidence did not support the jury's verdict for Van Taylor on the claim.

" ' To establish the elements of a prescriptive easement, the claimant must prove use of the property, for the statutory period of five years, which use has been (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right.' " (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1054; Code Civ. Proc., § 321.) These elements are designed to ensure " 'that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement.' " (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 938–939 (*Brewer*).)

Constructive notice may arise from " 'actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact.' " (*Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 236.) "To satisfy this requirement, the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent. "Open" generally means that the use is not made in secret or stealthily. It may also mean that it is visible or apparent. "Notorious" generally means that the use is actually known to the owner, or is widely known in the neighborhood." (Rest.3d Property, Servitudes, § 2.17, com. h. pp. 276, 278.) Prescriptive rights do not arise if the adverse use was hidden, concealed, or clandestine. (*Connolly v. McDermott* (1984) 162 Cal.App.3d 973, 977.)

34

A finding of a prescriptive easement must be based on clear and convincing evidence. (*Brewer, supra*, 161 Cal.App.4th at p. 938.) The evidence must be " ' " 'so clear as to leave no substantial doubt'; 'sufficiently strong to command the unhesitating assent of every reasonable mind.' " ' " (*Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1558.) On appeal, we review a finding that a prescriptive easement does exist, or does not exist, by determining whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; *Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 449.)

The Ivies contend they proved the elements of the prescriptive easement as to the land and the wall based on (1) the testimony of the prior owners of Lot 34 that they used the land and the wall for an uninterrupted period of more than five years before the dispute arose; and (2) evidence that Van Taylor was aware of their use and did not complain about it.

Even if the Ivies proved the adverse use of the property for the requisite five-year statutory period by "tacking"[11] their use to the prior owners' use and they presented evidence establishing all the other elements, the evidence that the use was "open and notorious" was not clear or convincing.

---

[11] "Periods of prescriptive use by successive owners of the dominant estate can be tacked together … ." (*Windsor Pacific v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 264; see also *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 295 [party seeking to establish prescriptive easement is "entitled to take advantage of the use made of the property in dispute by [his or her] predecessors in interest"].)

Based on the evidence presented at trial, the jury could have reasonably concluded that the Ivies' use of the land and wall was not open or notorious because Van Taylor did not have actual or constructive notice of it. First, they did not present evidence to prove that Van Taylor had actual notice of their use of the land and wall, nor did they refute his testimony to the contrary. Van Taylor testified that he could not see into their yard and testified that before early 2001 he had never been inside the Ivies' backyard. He told the jury that he trimmed the Ivies' tree from his side of the wall and believed that the vegetation was not planted on the land. He stated that before the dispute arose in this case, he was unaware that the Ivies or the prior owners had placed anything on the land or attached anything directly to the wall. The Ivies have not shown that Van Taylor's testimony was incredible or inherently improbable. Thus, as the trier of fact, the jury acted within its authority to believe Van Taylor's account, and therefore conclude he lacked actual knowledge of their adverse use of the land and wall.

In addition, the evidence on the issue of constructive notice supports the verdict for Van Taylor. Given that the land at issue is only three to four inches wide, is immediately next to the wall, and is surrounded by fencing and vegetation, a reasonably diligent owner might not be aware of any adverse encroachment onto the land or use of the wall. Moreover, the Ivies did not present evidence that their use of the land and wall was known in the neighborhood.

Accordingly, we conclude substantial evidence supports the jury's verdict for Van Taylor on the Ivies' prescriptive easement cause of action, and the trial court did not err in denying the Ivies a JNOV on that cause of action.

### 3.2. Bench Trial Phase

The Ivies' challenge to the court's order from the bench trial focuses on the court's finding that the evidence did not support the conclusion that the wall was a "joint wall," and the court's additional observation that "such a finding would be contrary to the prior appellate decisions issued in this matter." The Ivies assert that they established an ownership interest in the wall, and thus, this court should reverse the injunction requiring that they remove the wood lattice from the wall and preventing them from attaching any new items to the wall.

### 3.2.1. The Ivies did not demonstrate that the trial court misinterpreted the prior appellate opinions.

The Ivies argue that the trial court misread this court's opinions in *Van Taylor I* and *Van Taylor II* and thus inferred a conclusion about the wall ownership that this court did not previously reach.

In our view, this court's opinions in *Van Taylor I* and *Van Taylor II* are open to the interpretation the trial court gave them in the bench trial. Preliminarily, we observe that this court's prior opinions cannot be considered in a vacuum; they must be viewed in the context within which the parties litigated and presented their respective cases during the first and second trials.

Initially, the Ivies did not claim an ownership interest in the wall and did not contest Van Taylor's ownership. In their cross-complaint, they acknowledged that the wall belonged to Van Taylor. The Ivies' counsel also conceded that they did not present evidence supporting their ownership claim at the first trial. During the first trial the court found the original owner of

37

Van Taylor's property built the wall. After that, concluding that the wall did not qualify as a "party wall" as a matter of law, this court in *Van Taylor I* did not revisit the trial court's other findings concerning the wall. Thus, in light of the first trial's posture—the pleadings and the trial court's findings—this court's opinion in *Van Taylor I* could be interpreted in many ways, including, as the trial court did here.

*Van Taylor II* is also open to the interpretation that the trial court gave it in the statement of decision. During the second trial, the Ivies claimed they had a joint ownership interest in the wall based on the original owner's, Mrs. Heiser, statements about the wall's construction, and the fact that the foundation was partially on Lot 34. After that, on appeal in *Van Taylor II,* the Ivies argued, among other claims of error, that the trial court erred in failing to find they were joint owners of the wall.

In *Van Taylor II*, this court acknowledged the Ivies claimed an ownership interest to the wall. This court did not, however, explicitly address the issue. Instead, this court broadly concluded that Van Taylor had established the first element of trespass for the retrial. Thus, this court directed that on remand, the jury should be instructed that Van Taylor owned, occupied, controlled, or had the exclusive right to possess the *property*. Our conclusion about the property was not confined to the land; in this context, "property" could be interpreted to include the land and the wall. Subsequently, in the opinion, this court stated that all of the Ivies' other contentions, which included their claim of joint ownership of the wall, were moot in light of the conclusions in the opinion. Thus, read as a whole, the opinion in *Van Taylor II* can be construed as implicitly rejecting the Ivies' claim of joint ownership of the wall. Indeed, the trial court's comments during

the third trial reflect that the court read *Van Taylor II* to hold that Van Taylor had established that he owned the land and the wall—that ownership interest in the land and the wall had been previously established in the second trial and affirmed in *Van Taylor II*.

Thus, we conclude that this court's opinions in *Van Taylor I* and *Van Taylor II* are susceptible to more than one interpretation, including the one the trial court applied in its statement of decision. Consequently, the Ivies have not shown reversible error concerning the trial court's interpretation of this court's prior opinions.

### 3.2.2. The evidence presented in this trial supported the trial court's finding on the ownership of the wall.

In any event, even if we determined that the trial court had misconstrued our prior opinions concerning the wall's ownership, we would nonetheless conclude that the court did not err finding that the Ivies had failed to prove joint ownership of the wall in the third trial.

The evidence presented at trial on the ownership of the wall conflicted. On the one hand, Van Taylor claimed exclusive ownership based on (1) evidence he presented during the first trial as reflected in the trial court's decision that the original owner of Lot 35 built the wall; (2) the fact that the stem of the wall and most of the foundation is located on Lot 35; (3) the fact that the construction, style, and appearance of wall matched the other walls on Lot 35; and (4) that the other fences in the Ivies backyard did not match the wall. On the other hand, the Ivies claimed joint ownership based on (1) the evidence from Mrs. Heiser; (2) the fact that the four to six inches of the wall's

39

foundation are on Lot 34; and (3) the fact that according to their experts, the wall must have been constructed with the cooperation of the owners of both lots.

The trial court's decision reflects that it resolved this conflict in the evidence in favor of Van Taylor. Based on our review of the record and considering the deferential standard of appellate review, we cannot say that the court erred in resolving the dispute. The evidence supporting the trial's conclusion is substantial, and thus the court acted within its power as the trier of fact in deciding that the wall was not jointly owned.[12]

In view of the foregoing, we conclude that the Ivies have not demonstrated that the trial court committed reversible error in the bench trial.

---

[12] In reaching this conclusion, we reject the Ivies' request raised in a footnote in their opening brief in the cross-appeal that this matter should be returned to the trial court to consider the application of Civil Code section 841, governing the rights and responsibilities of neighbors with respect to "division walls." The Ivies do not present any argument that section 841, which was not operative until more than 10 years after the lawsuit was filed in this case, should be given retroactive effect.

## DISPOSITION

The judgment and order denying the parties' requests for JNOV are affirmed. Each party shall pay its own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.

41